UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD CHAPEL,<br><br>            Plaintiff,<br><br>   v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., et. al.,<br><br>            Defendants. | CASE NO. C10-1345BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' 12(B)(6) MOTION TO DISMISS |

This matter comes before the Court on Defendants BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, L.P. ("BAC") and Mortgage Electronic Registration Systems, Inc.'s ("MERS") (collectively, "Defendants") motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. 13), pro se Plaintiff Richard Chapel's ("Chapel") motion for change of venue (Dkt. 12), and Chapel's motion for a preliminary injunction (Dkt. 17). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants in part and denies in part Defendants' motion to dismiss, denies Chapel's motion for change of venue, and denies Chapel's motion for a preliminary injunction.

## I. PROCEDURAL HISTORY

On July 23, 2010, Chapel filed his original complaint in the Superior Court of Clark County, in Washington. Dkt. 2, Ex. B at 5. On August 20, 2010, Defendants

ORDER – 1

removed the case to federal district court pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.[1] *See* Dkt. 1. On September 20, 2010, Chapel filed his motion for change of venue. Dkt. 12. On September 22, 2010, Defendants filed their motion to dismiss pursuant to Rule 12(b)(6) Federal Rule of Civil Procedure. Dkt. 13. Defendants responded to the motion for change of venue on October 7, 2010. Dkt. 15. Also on October 7, 2010, Chapel filed his response in opposition to the motion to dismiss (Dkt. 16) and filed a separate motion for injunctive relief (Dkt. 17). Defendants filed a reply to Chapel's response to their motion to dismiss on October 15, 2010. Dkt. 20.

On October 12, 2010, Chapel moved this Court for a temporary restraining order to enjoin Defendant's from proceeding with the foreclosure and Trustee's Sale. Dkt. 22. On October 18, 2010, the Court denied Chapel's temporary restraining order. Dkt. 24.

## II. FACTUAL BACKGROUND

On February 7, 2010, Chapel executed a promissory note in the amount of $247,500, and a deed of trust to property located at 5405 NE 95th Street, Vancouver, Washington (hereinafter, the "Property") naming MERS as the beneficiary on the deed of trust. Dkt. 11 at 19, ¶ 2. The property is located in Clark County, Washington. *See* Dkt.11. In his declaration, Chapel alleges that within nine months of purchasing the Property, the value of the Property decreased by approximately $100,000. *Id*. at 19, ¶ 3. Between February 2009 and March 30, 2010, Chapel sent fourteen or fifteen notices to Defendants requesting relief from his existing mortgage terms. *See id*. at 19, ¶¶ 4-6. Despite these requests, BAC, through its Trustee, Recontrust Company, N.A. ("Recontrust"), recorded a "Notice of Trustee's Sale" (the "Notice") on April 29, 2010. Dkt. 11 at 2, 14. The sale of the Property, according to the Notice, was scheduled to occur on July 30, 2010. Dkt. 11 at 2.

---

[1] This case was filed in the Western District of Washington in Seattle. However, it was properly transferred to Tacoma as the Property is located in Clark County. *See* Local Rule CR 5(e)(1).

ORDER – 2

Chapel contends that when he received the notice of sale, BAC was named as the beneficiary in lieu of MERS. *Id*. at 2, ¶ 8. At some point, MERS had assigned its interest in the Property to BAC—Chapel does not allege the exact date that the assignment occurred. *Id*. Chapel contends that he never received documentation of MERS' assignment to BAC and that the assignment was never recorded with Clark County. *Id*. at 2, ¶¶ 9-10.

Additionally, Chapel states that on March 19, 2010, Recontrust sent him a Debt Validation Notice. Dkt. 11 at 3, ¶ 17. On March 30, 2010, Chapel stated that he responded to the Debt Validation Notice in writing and disputed the debt. *Id*. at ¶ 18. Chapel alleges that Defendants failed to provide the required verification of the debt. *Id*. at ¶ 19.

Finally, Chapel contends that in some of his "earliest communications" with BAC, he informed them "that the payments were being withheld from them in order to encourage them to solve the problem." Dkt. 11 at 4-5. According to Chapel, since April 2009, he had been making mortgage payments into a trust account instead of paying BAC directly. *Id*; *See also* Dkt. 16 at 7. Chapel gave BAC the trust account information so it could verify that the payments were being made. *Id*. However, BAC reported to the credit bureaus that Chapel had failed to make his mortgage payments. *Id*. at 5.

### III. DISCUSSION

**A. Standard for 12(b)(6) Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Dismissal of a complaint may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir.1990). While a complaint attacked by a FRCP 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

ORDER – 3

1  formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v.*
2  *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) ( internal citations omitted ).

3        Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient
4  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "
5  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550
6  at 570). A claim has "facial plausibility" when the party seeking relief "pleads factual
7  content that allows the court to draw the reasonable inference that the defendant is liable
8  for the misconduct alleged." *Id*. First, "a court considering a motion to dismiss can choose
9  to begin by identifying pleadings that, because they are no more than conclusions, are not
10 entitled to the assumption of truth." *Id*. at 1950. Second, "[w]hen there are well-pleaded
11 factual allegations, a court should assume their veracity and then determine whether they
12 plausibly give rise to an entitlement to relief." *Id*. "In sum, for a complaint to survive a
13 motion to dismiss the non-conclusory factual content, and reasonable inferences from that
14 content must be plausibly suggestive of a claim entitling the pleader to relief." *Moss v.*
15 *U.S. Secret Service*, 572 F.3d 962, 2009 WL 2052985 (9th Cir. July 16, 2009). If a claim
16 is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be
17 afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*,
18 717 F.2d 1295, 1300 (9th Cir.1983). If the claim is not based on a proper legal theory, the
19 claim should be dismissed. *Id*.

20     As a general rule, courts may not consider materials beyond the pleadings in a
21 ruling on a 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001).
22 However, the Court may take judicial notice of public records when considering a
23 12(b)(6) motion to dismiss. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995).
24 Courts may also consider documents referenced extensively in the complaint, documents
25 that form the basis of the claim, and matters of judicial notice when determining if a
26 plaintiff has stated a claim upon which relief may be granted. *United States v. Ritchie*,
27 342 F.3d 903, 908-09 (9th Cir.2003).

28

ORDER – 4

Finally, because Chapel is a pro se plaintiff, the Court will liberally construe Chapel's pleadings. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988).

### B. Defendants' 12(b)(6) Motion to Dismiss

In his first amended complaint, Chapel alleges eight separate causes of action (Dkt. 11 at 2-5). For clarity, the Court will separate Chapel's causes of action into four categories for discussion[2]: (1) Chapel's first cause of action, in which he challenges BAC's standing to foreclose on the property; (2) Chapel's second, fifth, and sixth causes of action, in which he alleges that Defendants violated 12 U.S.C. § 5219, the Troubled Asset Relief Program ("TARP"); (3) Chapel's third cause of action, in which he alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"); and (4) Chapel's seventh and eighth causes of action, in which he alleges that Defendants slandered and defamed him by reporting to the credit bureaus that he failed to make his mortgage payments. *Id*. at 2-5.

### 1. BAC's Standing to Foreclose on the Property

At some point before BAC foreclosed on the Property, MERS assigned its interest in the Property to BAC. Dkt. 11 at 2. Chapel never received any documentation regarding the assignment and argues that without evidence of "an original, properly executed assignment," BAC lacks standing to foreclose on the property. *Id*. The basis of Chapel's claim that BAC lacks standing is based upon the fact that, when Chapel signed the promissory note and deed of trust for the Property, MERS was the beneficiary, not BAC. Chapel relies on the deed of trust as evidence that BAC lacks standing, thus, the Court will consider the deed of trust as part of the pleadings when deciding if Chapel's first cause of action should be dismissed under Rule 12(b)(6). *See Ritchie*, 342 F.3d at 908-09.

---

[2]This Court will address Chapel's fourth cause of action for injunctive relief with Chapel's motion for preliminary injunction (Dkt. 17).

ORDER – 5

1   Under RCW 61.24 *et seq*, Washington's Deeds of Trust Act ("DOTA"), there is no
2  requirement that the borrower, in this case Chapel, must have notice of assignment of the
3  promissory note or that the assignment must be recorded with the County before a Notice
4  of Trustee's Sale can be recorded. *See id*. The fact that Chapel never received notice of
5  the assignment does not make BAC's foreclosure unlawful. In fact, Chapel admits in his
6  amended complaint that he knew that he was supposed to make his mortgage payments to
7  BAC: "From some of my earliest communications with BAC, they were informed that the
8  payments were being withheld from [it] in order to encourage them to solve the problem."
9  Dkt. 11 at 4, ¶ 5. Also, the deed of trust that Chapel signed does not require the
10 Defendants to give notice before selling the promissory note: "The Note or a partial
11 interest in the Note (together with this Security Instrument) can be sold one or more times
12 without prior notice to Borrower." Dkt. 14 at 16, ¶ 20.

13   Chapel also contends that, in order to have standing to foreclose on the property,
14 Defendants must have recorded the promissory note assignment with Clark County. Dkt.
15 11 at 2, ¶ 10. In his amended complaint, Chapel includes copies from the Clark County
16 website of the "Recorded Document History" for the Property. Dkt. 11 at 14-15. The
17 copies provided by Chapel do not show the deed of trust assignment. However,
18 Defendants provided the Clark County auditor's recording number of the assignment,
19 which the Court takes judicial notice of. *See Mack v. South Bay Beer Distrib.*, 798 F.2d
20 1279, 1282 (9th Cir.1986) ( court may take judicial notice of matters of public record).
21 The assignment of interest from MERS to BAC was recorded on March 31, 2010, under
22 recording number 4653375. *See* Dkt. 21 at 1 (Yates Decl.); *see also*
23 http://gis.clark.wa.gov/applications/gishome/auditor/ (enter "4653355" in "Recording
24 Number" database).

25   Finally, in his response, Chapel argues that according to the law in the twenty-
26 three states that do not allow nonjudicial foreclosure, Defendants failed to execute the
27 necessary foreclosure documents. *See* Dkt. 16 at 6-7. Chapel states that the Court "must

28

ORDER – 6

assume that defendants could have and would have erred and committed the violation of the law complained about." *Id*. However, Chapel asserts no factual allegations to support his contention that Defendants failed to properly foreclose on the Property at issue in this case under Washington law.

Accordingly, with respect to his first cause of action, Chapel has failed to assert a claim upon which relief can be granted.

### 2. TARP Claims

In his second, fifth, and sixth causes of action, Chapel asserts that Defendants violated the TARP, by failing to modify the terms of his loan. Dkt. 11 at 2-4. Defendants properly argue that there is no express private right of action under TARP against private defendants.[3] The Court notes that, in creating TARP, Congress created a private right of action for those harmed by the Secretary of the Treasury's ("Secretary") actions. 12 U.S.C. § 5229(a). This right, however, permits the filing of actions against the Secretary, not against private lenders, such as Defendants in this case. *See Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp.2d 1177, 1185 (N.D. Cal.2009). As Congress expressly provided for the enforcement of TARP, it is "highly improbable that Congress absent mindedly forgot to mention an intended private action" for other sections of the statute. *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19-20 (1979) (internal quotations omitted) (noting also that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it").

Accordingly, the Court concludes that Congress did not create a cause of action that would allow Chapel to bring TARP claims against Defendants. Therefore, with respect to his second, fifth, and sixth causes of action, Chapel has failed to state a claim upon which relief could be granted.

---

[3] Chapel attempts to assert that BAC is actually a government entity because it accepted TARP funds. However, he cites no authority to support this assertion.

ORDER – 7

### 3. **FDCPA Claim**

In his third cause of action, Chapel claims that he disputed his debt in writing and that Defendants failed to provide verification of the debt in violation of the FDCPA. Dkt. 11 at 3, ¶¶ 18-20. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Defendants argue that the FDCPA does not apply because they are not "debt collectors" within the meaning of the statute. Dkt. 13 at 9. The FDCPA exempts from the definition of a debt collector

> any person collecting or attempting to collect any debt owed or due or asserted owed or due another to the extent such activity ... (ii) concerns a debt owed which was originated by such person ... [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. §1692a(6)(F). In addition, a debt collector does not include a consumer's creditors. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (defendant bank was the "actual, original, consumer creditor of [plaintiff's] agreement"). Further, "an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of the assignment; conversely, an assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000).

Pursuant to the pleadings, there are enough facts to suggest that BAC may have been assigned the loan after default, even though Chapel does not expressly allege that BAC acquired the loan after default. *See Karim-Panahi*, 839 F.2d at 623 (the Court will liberally construe a pro se plaintiff's pleadings). BAC does not expressly dispute that it acquired Chapel's loan after default and the Court cannot determine from the pleadings whether BAC acquired the loan after default. Even if BAC were to argue that it acquired the loan prior to default, BAC would have to rely on evidence outside of the pleadings, which is inappropriate for the Court to consider on a 12(b)(6) motion to dismiss. Thus, for

ORDER – 8

the purposes of Defendant's motion to dismiss, the Court cannot conclude that BAC is not a debt collector under the FDCPA.

Defendants also contend that even if they were debt collectors within the meaning of the FDCPA, Chapel's FDCPA claim should be dismissed because he did not properly dispute the debt pursuant to 15 U.S.C. § 1692g(b).

> If the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Chapel relies on a letter dated March 30, 2010 as proof that he disputed the debt. Dkt. 11 at 3, ¶ 18. Defendants also include with their motion to dismiss a copy of a letter dated March 30, 2010, from Chapel. Dkt. 14-1 at 22-23. Defendants ask the Court to take judicial notice of the March 30, 2010 letter as evidence that Chapel did not properly dispute the debt. Dkts. 13 at 6, 20 at 6. However, even if the Court were to consider the letter as part of the pleadings,[4] the issue of whether the letter properly disputes the debt would be more appropriate for the Court to consider on a motion for summary judgment.

Therefore, the Court denies Defendants motion to dismiss as to Plaintiff's FDCPA claim.

### 4. Slander and Defamation Claims

In his seventh and eighth causes of action, Chapel alleges that Defendants slandered and defamed him by reporting to credit bureaus that Chapel failed to make his mortgage payments. Dkt. 11 at 4-5. Chapel alleges that in some of his "earliest communications" with BAC, he informed it "that the payments were being withheld from

---

[4]Because the Court is not considering the March 30, 2010 letter, it does not reach the question of whether the letter could be considered part of the pleadings pursuant to *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir.2003).

ORDER – 9

1 [it] in order to encourage [it] to solve the problem." Dkt. 11 at 4-5. Slander is a form of
2 defamation. *See Black's Law Dictionary* 1421 (8th ed., 2004) (slander is defined as "[a]
3 defamatory assertion expressed in a transitory form"). In order to prevail in a defamation
4 action, a plaintiff must prove the following elements: (1) falsity; (2) lack of privilege; (3)
5 fault; and (4) damages. *Mohr v. Grant*, 153 Wn.2d 812, 822 (2005). To satisfy the falsity
6 element of a defamation claim, a plaintiff must prove that the offensive statement,
7 whether in the form of a statement or opinion, falsely expresses or implies provable facts.
8 *Id.* at 822-23.

9 In his pleadings, Chapel admits that he was not making his mortgage payments to
10 Defendants. Dkt. 11 at 4-5. Thus, Chapel cannot prevail on the first element of a
11 defamation claim because he admits that what BAC told the credit bureaus was not false
12 and, therefore, not defamatory.

13 Accordingly, Chapel's seventh and eighth causes of action are dismissed for
14 failure to state a claim upon which relief could be granted.

15 **B.   Chapel's Motion to Change Venue**

16 Chapel moves the Court to change the venue to the federal court located in
17 Portland, Oregon. Dkt. 12. When an action is removed to federal court, venue is governed
18 by 28 U.S.C. § 1441, which designates proper venue as the district "embracing the place
19 where the state action was pending." 28 U.S.C. § 1441(a); see *Polizzi v. Cowles*
20 *Magazines, Inc.*, 345 U.S. 663, 665 (1953). Western Washington Local Rule CR 5(e)(1)
21 provides that "[i]n all civil cases in which all defendants reside, or *in which the claim*
22 *arose*, in the counties of Clallam, *Clark*, Cowlitz, Grays Harbor, Jefferson, Kitsap, Lewis,
23 Mason, Pacific, Pierce, Skamania, Thurston, and Wahkiakum, the case file will be
24 maintained in Tacoma." Local Rule CR 5(e)(1) (emphasis added). Furthermore, a civil
25 action can be transferred only "to any other district or division where it might have been
26 brought." 28 U.S.C. § 1404(a).

27 Chapel originally filed his claim in Clark County, Washington, he seeks relief
28 under both federal and Washington law. The disputed property is located in Clark

ORDER – 10

County, Washington. Dkts. 11 at 2; 12 at 1, ¶¶ 1, 3. The Court concludes that the United States District Court for the Western District of Washington, in Tacoma, is the proper venue. While the federal courthouse in Portland is physically closer to Chapel's residence, there is nothing to suggest that the United States District Court of Oregon would have jurisdiction over this matter.

Accordingly, Chapel's motion for change of venue is denied.

**C.     Chapel's Motion for Injunctive Relief**

Chapel moves the Court to enjoin Defendants from foreclosing on the Property "until all issues herein can be fully addressed."[5] Dkt. 17 at 8. While not expressly stated in the motion, the Court will assume that Chapel is requesting a preliminary injunction. To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008).

First, Chapel has failed to establish that he is likely to succeed on the merits. In this Order, the Court has dismissed all of Chapel's claims with exception to the FDCPA claim. *See supra* III. B. Second, if Chapel were to succeed on the FDCPA claim, Chapel would not be irreparably harmed without injunctive relief because he could recover actual damages pursuant to 15 U.S.C. § 1692k. Finally, Chapel has not established that a balance of equities tips in his favor or that an injunction is in his best interest.

Defendants and Chapel both cite to RCW 61.24.130 as grounds to grant injunctive relief under state law to restrain a Trustee's sale. However, under RCW 61.24.130(1), Chapel would need to pay the entire sum owing on the deed of trust to a registry of the Clerk of the court. Chapel has not demonstrated the ability to pay the entire sum owing.

---

[5] The Court has combined Chapel's motion for preliminary injunction with Chapel's fourth cause of action in his amended complaint as both the motion and the cause of action seek preliminary injunctive relief. *See* Dkts. 11, 17.

ORDER – 11

In fact, Chapel asserts that the primary reason for nonpayment of his mortgage is that he wants BAC to lower the principal amount of his loan. Dkt. 11 at 19, ¶ 6.

Therefore, the Court denies Chapel's motion for a preliminary injunction. If Chapel can prove to the Court that he is able to meet the requirements under RCW 61.24.1320, including paying the entire sum owing on the deed of trust, Chapel may bring another motion for preliminary injunction. For the reasons stated above, Chapel's fourth cause of action in his amended complaint is dismissed for failure to state a claim upon which relief could be granted and his motion for preliminary injunction is denied.

### III. ORDER

Therefore, the Court does hereby find and **ORDER** that:

(1) Chapel's first, second, fourth, fifth, sixth, seventh, and eighth causes of action are **DISMISSED without prejudice**;

(2) Chapel's Motion for Change of Venue (Dkt. 12) is **DENIED**; and

(3) Chapel's Motion for Preliminary Injunction (Dkt. 17) is **DENIED**.

DATED this 2nd day of November 2010.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER – 12